UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ROBERT SIEVER,**
**GINNEY SIEVER,**

      **Plaintiffs,**

-vs-                      Case No. 6:08-cv-1388-Orl-19GJK

**BWGASKETS, INC.,**
**BRUCE M. WILLIAMS,**
**ANN P. WILLIAMS,**

      **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1. Motion of Defendants BWGaskets, Inc., Bruce M. Williams, and Ann P. Williams to Dismiss the Second Amended Complaint (Doc. No. 27, filed Dec. 8, 2008); and

2. Response of Plaintiffs Robert Siever and Ginney Siever in Opposition to Defendants' Motion to Dismiss (Doc. No. 30, filed Dec. 22, 2008).

## Background

Plaintiffs Robert and Ginney Siever filed this action against Defendants BWGaskets, Inc., Bruce M. Williams, and Ann P. Williams (collectively, "Defendants") alleging a violation of the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-213 (2008), common law fraud, three breaches of contract, and a violation of the Florida Sale of Business Opportunities Act ("FSBOA"), Fla. Stat. §§ 559.801-815 (2008). (Doc. No. 26, filed Nov. 17, 2008.) Defendants move to dismiss the Sievers' Second Amended Complaint or, in the alternative, for a more definite statement of their claims. (Doc. No. 27.)

This dispute arises from three agreements between the Sievers and Defendants concerning the exclusive use of a trademark and trade name called the "Gasket Guy." (Doc. No. 26 ¶¶ 7-29.) The Sievers met Bruce Williams, owner of BWGaskets, at a business opportunity exposition in California, and Mr. Williams advised the Sievers that he, his wife, Ann Williams, and BWGaskets were selling the exclusive rights to use the "Gasket Guy" trade name in various markets around the country. (*Id.* ¶¶ 7-8.) Eventually, the Sievers entered into three separate agreements with Defendants to use this trade name in three markets: Los Angeles; Orange County, California; and Las Vegas. (*Id.* ¶¶ 11, 15, 23.)

Despite being promised exclusive use of the trade name, however, the Sievers discovered that other businesses in the Los Angles and Orange County areas were using the "Gasket Guy" name. (*Id.* ¶¶ 17-18.) An attorney for BWGaskets sent a cease-and-desist letter to one known offender, but the business continued to use the "Gasket Guy" trade name, and the attorney took no further action. (*Id.* ¶ 18.) Similarly, regarding the Las Vegas area, Defendants represented to the Sievers that a business already operating with the "Gasket Guy" trade name had defaulted on its agreement with Defendants. (*Id.* ¶¶ 21-23.) However, despite promising the Seivers that Defendants would force the business to stop using the "Gasket Guy" name, Defendants did nothing to protect the Sievers' rights to an exclusive territory. (*Id.* ¶ 26.)

The Sievers allege that they later discovered that Defendants did not apply for protection of the "Gasket Guy" trade name with the United States Patent and Trademark Office until September 10, 2007, nearly eighteen months after they first sold the rights for the exclusive use of the trade name to the Sievers. (*Id.* ¶ 19.) Further, the Sievers discovered that Defendants had no rights to the "Gasket Guy" trade name in Nevada; the alleged infringer actually held those rights. (*Id.* ¶ 28.) The

Sievers allege that they have since been forced to close their Las Vegas store. (*Id.* ¶ 27.) They filed this lawsuit several months later.

**Standard of Review**

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from the complaint. *E.g.*, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds). The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. Fed. R. Civ. P. 12(d); *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

**Analysis**

Defendants appear to make two related types of arguments in their Motion: (1) that portions of the Second Amended Complaint do not comply with applicable pleading standards; and (2) that the Sievers have failed to plead certain requirements of their claims.

As a general matter, the Federal Rules of Civil Procedure require only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, despite this liberal pleading requirement, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." *Kindred Hosp. E. LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:05-cv-995, 2007 WL 601749, at *4 (M.D.

Fla. Feb. 16, 2007) (internal quotations omitted) (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006)). Whether a complaint gives reasonable notice is a question of law. *Evans v. McClain of Ga.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997); *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 481 (5th Cir. 2001).

Rule 10(b) of the Federal Rules of Civil Procedure mandates that, "if doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

The Eleventh Circuit explained that Rules 8 and 10 work together:

> to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir.1996) (citation omitted). If a violation of Rule 10(b) exists, the Court may grant a motion to dismiss with leave to amend or, "more properly perhaps, grant a motion for more definite statement pursuant to [Federal Rule of Civil Procedure] 12(e)." *Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996).

When the plaintiff makes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that those claims meet a heightened pleading standard. Under the Eleventh Circuit's case law, "the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). "Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud

must reasonably notify the defendants of their purported role in the scheme." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (internal citations and quotation marks omitted), *cited in Brooks*, 116 F.3d at 1381.

I.      **Violations of the FDUTPA**

Defendants do not appear to contend that the Sievers' FDUTPA claims are subject to a heightened pleading standard. (Doc. No. 27 at 2-3.) Instead they argue, without specifying the appropriate pleading standard,[1] that (1) the Sievers failed to identify which defendants are responsible for the violations; (2) the Sievers failed to specify "what precisely it is that BWGaskets sold" since they did not attach the contract to the Second Amended Complaint; and (3) that the Sievers did not plead that their damages resulted from the alleged misrepresentation. (*Id.*)

None of these arguments warrant dismissal because the FDUTPA claim meets the notice requirements of Federal Rule of Civil Procedure 8(a) and contains the necessary elements of a FDUTPA violation. The Second Amended Complaint specifies that Defendants Bruce Williams, Ann Williams, and BWGaskets are collectively responsible for violating the FDUTPA. (Doc. No. 26 ¶¶ 30-36.) The Sievers do not specify "what precisely it is" that BWGaskets sold because they allege that BWGaskets sold nothing; BWGaskets did not own a protected trademark for the "Gasket Guy" trade name, and therefore could not sell exclusive rights to use it. (*Id.* ¶ 19.) Finally, the Sievers contend in their Second Amended Complaint that "[a]s a result of Defendants' unfair

---

[1] Rule 9(b) applies to FDUTPA claims that are "grounded in fraud." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002); *Fla. Digital Network v. N. Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, at *2 (M.D. Fla. Aug. 30, 2006). Defendants, however, do not argue that the Sievers' FDUTPA claim is grounded in fraud. Accordingly, the Court will assume that Defendants' arguments concern the Sievers' compliance with Rule 8(a). In any event, the Sievers' FDUPTA claim comports with Rule 9(b) for the reasons stated in section II, *infra*.

practices" they suffered damages, including the loss of their investments, lost income, and expenditure of costs to maintain their stores. (*Id.* ¶ 35.) Thus, Defendants' arguments as to the FDUTPA claims are without merit.

## II. Fraud in the Inducement

Defendants next argue that the fraud claim must be dismissed because (1) it lacks specification of the alleged fraudulent statements as required by Federal Rule of Civil Procedure 9(b); and (2) the facts which were pled establish that the Sievers' reliance on "future promises" was unreasonable. (Doc. No. 27 at 4-6.) The Sievers respond that the specifics which Defendants seek are contained in the Second Amended Complaint and in the Sievers' Answers to Defendants' First Set of Interrogatories. (Doc. No. 30 at 3-4.) In addition, they argue that the issue of reliance is factual and should be addressed at the summary judgment stage or beyond. (*Id.* at 4.)

In *Durham v. Business Management Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988), the Eleventh Circuit explained that a plaintiff may meet the requirements of pleading fraud with specificity by attaching an affidavit setting forth the details of the alleged fraud. Here, the Sievers have submitted verified interrogatory answers specifying the approximate dates of oral conversations, contracts, faxes, letters, and emails. (Doc. No. 30-2 at 4-6.) These facts, coupled with the facts alleged in the Second Amended Complaint, are sufficient to satisfy the requirements of pleading fraud with particularity.[2] *Brooks*, 116 F.3d at 1380-81; *Durham*, 847 F.2d at 1512; *United States ex. rel. Clausen*, 290 F.3d at 1310 n.18..

---

[2] It does not appear from the Eleventh Circuit's case law that the supporting documents must be attached to the complaint, as would normally be required for their consideration while ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *United States ex. rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 n.18 (11th Cir. 2002) (noting that "other documents in the record" may be read together with the complaint in a Rule 9(b) challenge).

Defendants' second argument concerning reliance on promises of "future action" ignores the Sievers' allegation that Defendants allegedly misrepresented an *existing fact*: that Defendants owned the exclusive rights to use the "Gasket Guy" trade name. (*See* Doc. No. 26 ¶¶ 19, 28, 38.) Moreover, while a fraud action based on a "future action" is generally prohibited, an exception exists where "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform." *Mejia v. Jurich*, 781 So. 2d 1175, 1177-78 (Fla. 3d DCA 2001). Thus, contrary to Defendants' assertion, the facts pled in the Second Amended Complaint do not establish that the Sievers' reliance was unreasonable as a matter of law.[3]

### III. Breach of Contract Claims

Defendants next argue that the Seivers' breach of contract claims must be dismissed because the Seivers omitted certain factual details such as how the contracts were "materially breached," certain "express provisions" of the contracts, and "how BWGaskets failed to provide an exclusive territory." These arguments are wholly without merit. Much of the factual information supposedly missing from the claims can be found in the "Statement of Facts" section of the Second Amended Complaint. (*See* Doc. No. 26 ¶¶ 7-29.) More importantly, Rule 8(a) requires nothing more than a statement of the basic factual grounds for relief; a plaintiff is not required to map out in detail how the defendant has breached a contract. *See* Fed. R. Civ. P. 8(a); *Twombly*, 127 S. Ct. at 1965 n.3.

As for the substantive elements of a breach of contract claim, the Second Amended Complaint specifies the existence of a contract, the breach of that contract, and the damages flowing

---

[3] The court's opinion in *Mejia*, relied on by Defendants, actually concerned whether a promise of future action constituted a "misrepresentation," not whether reliance on such a promise would be unreasonable. *Mejia,* 781 So. 2d at 1177-78.

from the breach for each of the Sievers' three contract claims. (Doc. No. 26 ¶¶ 42-43, 46-47, 50-51.) Thus, the Sievers have pled three viable breach of contract claims. *E.g.*, *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

## IV. Violation of the Florida Sale of Business Opportunities Act

Defendants' final argument for dismissal is that the Sievers failed to plead an action under the Florida Sale of Business Opportunities Act ("FSBOA"). (Doc. No. 27 at 9-12.) The Act prohibits a "business opportunity seller" from using "untrue or misleading statements in the sale of a business opportunity," failing to disclose certain information, or failing to deliver the equipment, supplies, or products necessary to begin the business within a certain amount of time of the agreed upon delivery date. Fla. Stat. § 559.813. The Act also creates a civil remedy provision allowing an aggrieved buyer of a business opportunity to bring an action for equitable and legal relief. *Id.* § 559.813(3)-(4).

Defendants appear to claim that the Sievers did not plead that Defendants were sellers of a "business opportunity." According to Fla. Stat. § 559.801:

> (1)(a) "Business opportunity" means the sale or lease of any products, equipment, supplies, or services which are sold or leased to a purchaser to enable the purchaser to start a business for which the purchaser is required to pay an initial fee or sum of money which exceeds $500 to the seller, and in which the seller represents:
>
> > 1. That the seller or person or entity affiliated with or referred by the seller will provide locations or assist the purchaser in finding locations for the use or operation of vending machines, racks, display cases, currency or card operated equipment, or other similar devices or currency-operated amusement machines or devices on premises neither owned nor leased by the purchaser or seller;
> >
> > 2. That the seller will purchase any or all products made, produced, fabricated, grown, bred, or modified by the purchaser using in whole or in part the supplies, services, or chattels sold to the purchaser;

> 3. That the seller guarantees that the purchaser will derive income from the business opportunity which exceeds the price paid or rent charged for the business opportunity or that the seller will refund all or part of the price paid or rent charged for the business opportunity, or will repurchase any of the products, equipment, supplies, or chattels supplied by the seller, if the purchaser is unsatisfied with the business opportunity; or[4]
>
> 4. That the seller will provide a sales program or marketing program that will enable the purchaser to derive income from the business opportunity, except that this paragraph does not apply to the sale of a sales program or marketing program made in conjunction with the licensing of a trademark or service mark that is registered under the laws of any state or of the United States if the seller requires use of the trademark or service mark in the sales agreement.

The Second Amended Complaint explains that the Defendants sold products, equipment, and supplies to the Sievers to enable them to start one of more businesses for which the Sievers were required to pay an initial fee that exceed $500.00. (Doc. No. 26 ¶ 54.) The Second Amended Complaint also states that Defendants represented to the Sievers that Defendants would provide a sales program enabling the Sievers to derive income from the business opportunities. (*Id.* ¶ 55.)

In addition, Defendants argue that the Sievers failed to plead that they suffered damages related to the violation of the FSBOA. (Doc. No. 27 at 12.) To the contrary, Paragraph 60 of the Second Amended Complaint states that the Sievers suffered damages from Defendants' violation of the FSBOA, including the loss of their investments, lost income on those investments, and the costs associated with maintaining the "Gasket Guy" stores. (Doc. No. 26 ¶ 60.)

Accordingly, Defendants' arguments are without merit.

---

[4] In paraphrasing this statutory provision in their Motion to Dismiss, Defendants have replaced "or" with "and." (Doc. No. 27 at 10.) The Court assumes that this misrepresentation of controlling law was unintentional.

## V.     More Definite Statement

Defendants move in the alternative for a more definite statement. Because they have not established that the Second Amended Complaint is "vague or ambiguous" in any aspect, this request is also denied. Fed. R. Civil. P. 12(e).

## Conclusion

The Motion of Defendants BWGaskets, Inc., Bruce M. Williams, and Ann P. Williams to Dismiss the Second Amended Complaint (Doc. No. 27, filed Dec. 8, 2008) is **DENIED**. The earlier filed Motion to Dismiss (Doc. No. 17, filed Oct. 13, 2008), referencing the original Complaint (Doc. No. 1, filed Aug. 13, 2008), is **DENIED as moot**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 2, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record