ROBERT SIEVER,
GINNEY SIEVER,

                        **Plaintiffs,**

-vs-                                            Case No.  **6:08-cv-1388-Orl-19GJK**

BWGASKETS, INC.,
BRUCE M. WILLIAMS,
ANN P. WILLIAMS,
                        **Defendants.**
_____

## ORDER

This case comes before the court on the following:

1.     Motion for Summary Judgment by Defendants BWGaskets, Inc., Bruce M. Williams, and Ann

       P. Williams (Doc. No. 52, filed July 22, 2009);

2.     Memorandum in Opposition to Defendants' Motion for Summary Judgment by Plaintiffs

       Robert Siever and Ginney Siever (Doc. No. 56, filed Aug. 3, 2009);

3.     Motion for Partial Summary Judgment by Plaintiffs Robert Siever and Ginney Siever (Doc.

       No. 58, filed Aug. 6, 2009); and

4.     Response to Plaintiffs' Motion for Partial Summary Judgment by Defendants BWGaskets,

       Inc., Bruce M. Williams, and Ann P. Williams (Doc. No. 60, filed Aug. 14, 2009).

### Background

Plaintiffs Robert and Ginney Siever filed this action against Defendants BWGaskets, Inc.,

Bruce M. Williams and Ann P. Williams (collectively, "Defendants") alleging a violation of the

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-213 (2008),

common law fraud, breach of three separate contracts, and violation of the Florida Sale of Business Opportunities Act ("FSBOA"), Fla. Sta. §§ 559.801-815 (2008). (Doc. No. 26, filed Nov. 17, 2008.) Defendants move for summary judgment on each of the six counts alleged by the Plaintiffs. (Doc. No. 52.) Plaintiffs move for partial summary judgment with respect to liability for the breach of contract claims in Counts III, IV and V. (Doc. No. 58.)

The present action arises out of a business relationship between the Plaintiffs and the Defendants involving the exclusive use of the "Gasket Guy" trademark and trade name in the sale of commercial refrigeration gaskets. (Doc. No. 26 ¶¶ 7-29.) The relationship between the parties began when the Plaintiffs met Bruce Williams, owner of BWGaskets, at a business opportunity exposition in California. (*Id.* ¶ 7.) At the exposition, Bruce Williams advised the Plaintiffs that BWGaskets was selling the exclusive right to the use of the "Gasket Guy" trade name in various markets around the country, along with a "Gasket Guy" start-up package and training. (*Id.* ¶ 8.) Following a number of discussions between the parties, the Plaintiffs eventually entered into three separate agreements with the Defendants. (*Id.* ¶¶ 11, 15, 23.) These agreements conveyed to the Plaintiffs the exclusive right to use the "Gasket Guy" trade name in the Los Angeles, Orange County, and Las Vegas territories. (*Id.* ¶¶ 11, 15, 23.)

After entering into the agreements with the Defendants, the Plaintiffs discovered that other businesses were selling gaskets under the "Gasket Guy" trade name in the Los Angeles and Orange County territories. (*Id.* ¶ 18.) The Plaintiffs informed the Defendants of the infringement. (*Id.*) An attorney for BWGaskets subsequently sent cease and desist letters to the infringing "Gasket Guy" operators in the Los Angeles and Orange County territories; however, no further action was

undertaken by the Defendants to protect the Plaintiffs from the reported third-party infringement. (*Id.* ¶ 18.)

With respect to the Las Vegas Agreement, Defendants disclosed to the Plaintiffs that John Grose was operating a business under the "Gasket Guy" trade name in the Las Vegas territory. Grose had allegedly defaulted on his agreement with the Defendants and was to be removed from the territory. (*Id.* ¶¶ 21-23.) The Plaintiffs maintain that the Defendants assured them that legal steps were being taken to remove Grose from the territory so that the Plaintiffs would be the exclusive users of the "Gasket Guy" trade name in the Las Vegas territory. (Doc. No. 58 ¶ 19.) In reliance on these representations, the Plaintiffs purchased the territory from the Defendants. (*Id.* ¶ 21.) Ultimately, Grose continued to operate under the "Gasket Guy" trade name in the Las Vegas territory despite the Defendants' efforts to remove him. (*Id.* ¶ 26.) As a result, the Plaintiffs chose to close down their operations in the territory. (*Id.* ¶ 27.)

## Standard of Review

### Summary Judgment

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## Analysis

In the Second Amended Complaint, the Plaintiffs set forth a number of claims arising out of a business relationship with the Defendants. In Count I, Plaintiffs allege violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201 *et seq.*, for unfair trade practices including; false advertising, selling a non-existent product or service, violations of the Florida Sale of Business Opportunities Act, and violations of federal franchise law. In Count II,

Plaintiffs bring a claim for fraud in the inducement, contending that the Defendants and their representatives made false statements regarding the "Gasket Guy" trade name and their ability and willingness to protect the mark from third-party infringement. In Counts III, IV and V, Plaintiffs allege breach of three separate agreements. Finally, in Count VI, Plaintiffs contend that the Defendants violated the Florida Sale of Business Opportunities Act ("FSBOA"). Fla. Stat. §§ 559.800 *et seq.*

Defendants move for summary judgment on the FDUTPA and fraud claims in Counts I and II claiming that neither the Defendants nor their representatives made false representations regarding the Los Angeles, Las Vegas, or Orange County Agreements. In addition, with respect to Count I, Defendants argue that the Plaintiffs fail to establish actual damages as required under FDUTPA. With respect to Counts III, IV and V, the Defendants argue that BWGaskets had the right to license the "Gasket Guy" trade name at the time it entered into the agreements with the Plaintiffs and did not breach the express terms of the exclusivity provision of the agreements. On Count V, the Defendants allege that the Las Vegas Agreement was subject to an valid oral modification taking into consideration the presence of an infringing third-party. Finally, on Count VI, the Defendants contend that the Plaintiffs fail to establish damages as required under FSOBA.

Plaintiffs move for partial summary judgment with respect to liability in the breach of contract claims of Counts III, IV and V. The Plaintiffs maintain that the Defendants failed to protect the Plaintiffs' territories from third-party infringement, as required by the agreements, and that the Defendants did not have the right to license the "Gasket Guy" trade name at the time they entered into the agreements purporting to grant such rights to the Plaintiffs.

# I. Florida Deceptive and Unfair Trade Practices Act - Count I

In Count I of the Second Amended Complaint, the Plaintiffs allege that the Defendants' actions including false advertising, selling a non-existent product, violating the Florida Sale of Business Opportunities Act, and violating federal franchise law constitute unfair trade practices under Section 501.203(3) of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").[1] The Defendants maintain in their Motion for Summary Judgment that the Plaintiffs' allegations under FDUTPA fail as a matter of law because the agreements do not set forth an affirmative duty for the Defendants to protect the Plaintiffs' territories from third-party infringement. Instead, the Defendants contend that the agreements set forth only that BWGaskets will not place any other Gasket Guy in the territories purchased by the Plaintiffs. The Defendants also contend that, at the time the parties entered into the agreement, the Defendants had the right to use, and to allow others to use, the "Gasket Guy" trade name. With respect to the Las Vegas territory at issue in Count V, the Defendants argue that the Plaintiffs were aware of the existence of a third-party infringer at the time the agreement was signed and that the agreement was subject to an oral modification taking into consideration the

---

[1] Section 501.203(3), Florida Statutes, states in pertinent part:

(3) "Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2006:
> (a) Any rules promulgated pursuant to the Federal Trade commission Act, 15 U.S.C. §§ 41 *et seq.*;
> (b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;
> (c) Any law, statute, rule, regulation or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices.

presence of this infringing third-party. Accordingly, the Defendants argue that they did not commit any deceptive or unfair acts actionable under FDUTPA.

The Florida Deceptive and Unfair Trade Practices Act is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). *See also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605-06 (Fla. 2d DCA 2000) (discussing the purpose of FDUTPA in light of its legislative history). A claim under FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. *Cohen v. Implant Innovations, Inc.*, No. 07-207770CIV, 2008 WL 3927223 (S.D. Fla. Aug. 21, 2008) (*citing Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2006). The conduct considered to be a deceptive or unfair for the purposes of a FDUTPA claim may be defined by "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices."[2] Fla. Stat. § 501.203(3)(c). Whether particular conduct constitutes such an unfair or deceptive trade practice is a question of fact. *Suris v. Gilmore Liquidating, Inc.*, 651 So. 2d 1282, 1283 (Fla. 3d DCA 1995). Although a FDUTPA claim "may arise from a single contract, this principle does not operate to convert every breach of

---

[2]When considering whether a defendant's actions "support a finding of unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce, 'courts have regarded the concept as extremely broad.'" *MJS Music Publ'n, LLC v. Hal Leonard Corp.*, No. 8:06-cv-488-T30EAJ, 2006 WL 1208015, at *2 (M.D. Fla. May 4, 2006) (*quoting Day v. Le-Jo Enters., Inc.*, 521 So. 2d 175, 178 (Fla. 3d DCA 1988). A practice will be deemed unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, or competitors, or other businessmen." *MJS Music Publ'n, LLC v. Hal Leonard Corp.*, No. 8:06-cv-488-T30EAJ, 2006 WL 1208015, at *2 (M.D. Fla. May 4, 2006).

contract into a claim under the Act," but instead reaches only that conduct which is unfair or deceptive. *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d, 1350, 1364 (M.D. Fla. 2007) (*citing PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003)). Accordingly, a claim under FDUTPA is not defined by the express terms of a contract, but instead encompasses unfair and deceptive practices arising out of business relationships.

In the present case, the Defendants contend that summary judgment on the FDUTPA claim in Count I is appropriate because the express terms of the agreements were not violated. However, the Defendants fail to address the representations made by BWGaskets to the Plaintiffs during the course of their business relationship. In particular, the Defendants fail to address the representations made to the Plaintiffs regarding BWGaskets' ability and willingness to protect the Plaintiffs' exclusive right to use the "Gasket Guy" trade name in the purchased territories.[3] This evidence creates a genuine issue of material fact whether the Defendants' actions constitute deceptive or unfair trade practices under FDUTPA. Moreover, genuine issues of material fact exist regarding the Defendants' right to license the "Gasket Guy" trade name at the time the parties entered into the agreements. Both Bruce and Ann Williams testified in their depositions that they had some rights to the "Gasket Guy" trade name prior to the time they entered into the agreements with the Plaintiffs, and a letter to Bruce Williams from Louis Castiello states that Castiello gave BWGaskets permission to use the "Gasket Guy" name in June 2003. However, Castiello's deposition testimony suggests that

---

[3] For example, the Defendants fail to address the statements of James Cox, the former marketing manager of BWGaskets. Cox stated in his deposition that Bruce Williams, Ann Williams and Cox discussed the concept of "protected territories" with customers and that Cox understood it to mean that once a defined territory was purchased by a Gasket Guy, no other Gasket Guy would be allowed to sell in that area, nor would the Defendants' sell in that area. (Doc. No. 55-A p. 22.)

such permission was provided no earlier than January 2007. In light of this conflicting evidence regarding both the Defendants' right to license the "Gasket Guy" trade name and the representations allegedly made to the Plaintiffs, the Defendants have not met their burden of establishing that there are no genuine issues of material fact with respect to the FDUTPA claim.

Defendants next argue that Count I fails as a matter of law because the Plaintiffs do not demonstrate actual damages through a calculation of diminished value as required under FDUTPA. With respect to the recovery of damages, FDUTPA provides that "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person shall recover actual damages, plus attorney's fees and court costs as provided in Section 501. 2105." Fla. Stat. § 501.211(2). The standard for calculating the actual damages recoverable under FDUTPA is well defined in the case law.

> [T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect - then the purchase price is the appropriate measure of damages.

*Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984). For the purpose of recovery under FDUTPA, "actual damages" do not include consequential damages, precluding recovery of future lost profits. *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc*., 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999) (*citing Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987).

In order to establish damages under FDUTPA, Plaintiffs retained Donald Young Jr., CPA, to perform a damages study. Young calculated the Plaintiffs' damages by deducting the value of the tangible items received by the Plaintiffs from the total amount paid for each territory. Young also deducted the value of the training services provided, as the value of these services is established in

the agreements themselves. However, Young did not calculate the diminished value of the right to use the "Gasket Guy" trade name resulting from the Defendants' alleged lack of rights in the trade name, nor did Young calculate the diminished value of the exclusivity of the agreements resulting from the Defendants' alleged failure to protect the Plaintiffs' territories.

Defendants maintain that the Plaintiffs' claim under FDUTPA fails as a matter of law because actual damages, a required element of a FDUTPA claim, must be established by a showing of diminished value, and the Plaintiffs fail to make such a showing. While the Defendants are correct in noting that actual damages are a requisite element of a FDUTPA claim, diminished value is not the only acceptable measure of actual damages. Where a product is rendered valueless by an alleged defect, the purchase price is an appropriate measure of damages. *Rollins*, 454 So. 2d at 585. Considering the damages report in the light most favorable to the Plaintiffs, Young could have considered the purchase price of the territories, less the value of the tangible items and the training services, to constitute the purchase price of the right to use the "Gasket Guy" trade name and the exclusivity of the territories. Young could then have determined that the Defendants' alleged lack of rights in the Gasket Guy trade name and the alleged failure to protect the exclusivity of the territories rendered these items valueless, a determination that is reasonable in light of the intangible nature of these items. While the Defendants' expert may refute these estimations at trial, Young's determination that these intangible items were rendered valueless by the Defendants' alleged actions is an appropriate calculation of actual damages under FDUTPA. Therefore, Defendant's Motion for Summary Judgment with respect to Count I will be denied.

## II. Fraud in the Inducement - Count II

To establish a claim of fraud in the inducement under Florida law, a plaintiff must demonstrate four elements: (1) that the defendant misrepresented a material fact; (2) that the defendant knew or should have known the falsity of the statement; (3) that the defendant intended that the representation would induce the plaintiff to enter into a contract or business relationship; and (4) that the plaintiff suffered injury in justifiable reliance on the misrepresentation. *Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 253 (Fla. 3d DCA 2005). Whether a party has made intentional fraudulent misrepresentations is a question of fact. *D & M Jupiter, Inc. v. Friedopfer*, 853 So. 2d 485, 489 (Fla. 4th DCA 2003). As a general rule "summary judgment in not appropriate to resolve a fraud claim under Florida law." *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008).

In Count II of the Second Amended Complaint, the Plaintiffs contend that the Defendants made false statements regarding their ownership of the "Gasket Guy" trade name, as well as their willingness and ability to legally protect the Plaintiffs' territories from third-party infringement. In their Motion for Summary Judgment, the Defendants argue that they had been granted the right to use and to license the "Gasket Guy" trade name at the time they entered into the agreements with the Plaintiffs and therefore did not make any false representations regarding their ability to convey rights in the trade name. However, as discussed above, the conflicting evidence in the record regarding the timing of the Defendants' acquisition of rights in the "Gasket Guy" trade name renders summary judgment inappropriate for Count II.

Defendants next argue that summary judgment is appropriate for Count II because the agreements set forth only that the Defendants will not sell the Plaintiffs' territories to third-parties and

there are no allegations that the Defendants made any misrepresentations as to the sale of the territories.  Under Florida law "a party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract."  *Hillcrest Pacific Corp. v. Yamamura*, 727 So. 2d 1053, 1056 (Fla. 4th DCA 1999).  In *Hillcrest*, a plaintiff who purchased a golf course for over $9 million later sued the real estate broker for failing to reveal that the seller was only seeking to net $6.2 million, and had agreed to pay any amount over and above that as a commission.  *Id.* at 1054.  The Fourth District Court of Appeal found that the plaintiff did not state a claim for fraud in the inducement because although the plaintiff alleged that the defendants misrepresented the price of the property, the purchase agreement clearly stated the price, expressly contradicting the alleged oral misrepresentation.  *Id.*  In the present case, the terms of the agreements do not adequately cover or expressly contradict the oral representations allegedly made to the Plaintiffs.  Instead, the oral representations concern additional terms not specifically addressed in the agreements.  As a result, the fraud claim is not limited to the four corners of the agreements, and the evidence regarding the representations made by BWGaskets personnel may be used to establish a claim for fraud in the inducement.  A jury considering such evidence could find that the Defendants misrepresented their ability and willingness to protect the Defendants' territory from third-party infringement. Accordingly, the Defendants are not entitled to summary judgment on Count II.

**III. Breach of Contract - Counts III, IV and V**

In Counts III, IV and V of the Second Amended Complaint, the Plaintiffs allege that the Defendants breached the Los Angeles, Orange County, and Las Vegas Agreements by failing to provide the Plaintiffs with the exclusive use of the "Gasket Guy" trade name in the purchased

territories, and by failing to convey rights in the "Gasket Guy" trade name. Both parties now move for summary judgment on Counts III, IV and V.

### a. Defendants' Duty to Protect Plaintiffs' Territories from Third-Party Infringement

The first breach of contract claim alleged by the Plaintiffs in Counts III, IV and V involves the exclusivity of the purchased territories and the Defendants' duty to protect those territories from third-party infringement. The Plaintiffs move for partial summary judgment on Counts III, IV, and V with respect to liability only, arguing that the term "exclusive" requires not only that the Defendants not resell the Plaintiffs' exclusive territories, but also that the Defendants take affirmative action to protect the territories from third-party infringement. The Defendants move for summary judgment on Counts III and IV, arguing that the Plaintiffs fail to allege a breach of any provision contained in the agreements because the express language of the agreements does not require the Defendants to protect the Plaintiffs' territories from third-party infringement. The Defendants also move for summary judgment on Count V, maintaining that the Las Vegas Agreement was not breached because the agreement was the subject of a subsequent oral modification.

Contract interpretation is generally a question of law. *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (*citing Gibbs v. Air Canada*, 810 F.2d 1529, 1532 (11th Cir. 1987). In reviewing a contract, a court must consider the document as a whole, rather than attempting to isolate certain portions of it. *U.S.B. Acquisition Co. v. Stamm*, 660 So. 2d 1075 (Fla. 4th DCA 1995); *Royal Oak Landing Homeowner's Ass'n v. Pelletier*, 620 So. 2d 732, 734 (Fla. 4th DCA 1977). A court must look first to the plain language of a contract and consider parol evidence only when the document is ambiguous on its face. *Kraft v. Mason*, 668 So. 2d 679, 683 (Fla. 4th DCA 1996); *Royal v. Cont'l Hotels, Inc. v. Broward Vending, Inc*, 404 So. 2d 792, 798 (Fla. 4th

DCA 1981).  A question of fact arises when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent to interpret the disputed provision.  *Larsen v. AirTran Airways*, No. 8:07-cv-00442-T-17-TBM, 2009 WL 1076035, at *9 (M.D. Fla. April 21, 2009).

Whether a document is ambiguous depends upon whether it is reasonably susceptible to more than one interpretation.  *State Farm Fire & Casualty Co. v. De Londono*, 511 So. 2d 604, 605 (Fla. 3d DCA 1987).  However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner, or because a contract requires interpretation or fails to define a term.  *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 6 (Fla. 4th DCA 1984); *Continental Casualty Co. v. Borthwick*, 177 So. 2d 687, 689 (Fla. 1st DCA 1965).  When the language in a contract is clear, a  court cannot indulge in construction or interpretation of its plain meaning.  *Lambert v. Berkley South Condo. Ass'n, Inc.*, 680 So. 2d 588, 594 (Fla. 4th DCA 1996).  "It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain", because a court cannot give a contract any meaning beyond that expressed.  *Baraka v. Broward County Hous. Auth.*, 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000); *City of Winter Haven v. Ridge Air, Inc.*, 458 So. 2d 434, 435 (Fla. 2d DCA 1984).

While both parties maintain that the agreements are unambiguous, they arrive at different conclusions regarding the Defendants' duty to protect the Plaintiffs' territories from third-party infringement.  The Defendants argue that the agreements require only that BWGaskets not sell the territories to a third-party for the purposes of replacing gaskets or any other commercial/residential kitchen business.  The Plaintiffs contend that the agreements additionally require the Defendants to take affirmative actions to prevent third-parties from using the "Gasket Guy" trade name in the purchased territories.

The disagreement regarding the Defendants' obligations results largely from the parties' inconsistent interpretations of the term "exclusive." The Los Angeles Agreement, by way of example, includes the term "exclusive" as follows:

> This contract . . . is for the sale of a single and exclusive Gasket Guy Territory in and around Marina del Ray, CA. This exclusive territory is for the buyer to own, develop and sell (if desired). BWGaskets, Inc. (Seller) will not sell the below territory to any individual or entity under any name for the purposes of replacing gaskets or any other commercial/residential kitchen business. Exact boundaries are listed below. The Buyer has the right to use the "Gasket Guy" name and logo in the operation of the business. There are no annual royalties or payments once an exclusive territory is established.

(Doc. No. 60-A3.)[4]

The Plaintiffs contend that the term "exclusive," by definition, requires the Defendants to take affirmative action to protect the Plaintiffs' territories from third-party infringement. To support this argument, the Plaintiffs ask the Court to determine the meaning of the term "exclusive" in isolation, citing only the definition of "exclusive" provided in Black's Law Dictionary.[5] While the term

---

[4] The Los Angeles and Orange County Agreements contain the same language with respect to the term exclusive. The Las Vegas Agreement contains similar language, stating:

> Seller agrees to sell and buyer agrees to buy that certain exclusive (single) Gasket Guy Territory in and around Las Vegas, Nevada, which exclusive territory buyer will own and may develop and sell (if buyer so desires). The description and borders of this exclusive territory are as follows: All of Clark and Henderson Counties. While this agreement is in effect, Seller will not sell the subject exclusive Territory to any other individual or entity for the business of replacing refrigeration gaskets or any other commercial/residential kitchen business.

(Doc. No. 60-A4.)

[5] Plaintiff does not cite to any specific language in the agreements, aside from the term exclusive, to support the argument that the agreements require the Defendants to take affirmative action to protect Plaintiffs from third party infringement. Instead, Plaintiff relies on parol evidence

"exclusive," standing alone, may be subject to any number of interpretations, including those suggested by both parties, the Plaintiffs' argument fails when the term is "considered in common with other provisions of the contract," as required under Florida law. *Dickerson Florida, Inc. v. McPeek*, 651 So. 2d 186, 187 (Fla. 4th DCA 1995). In each of the agreements, the use of the term "exclusive" is followed by a sentence stating that BWGaskets will not sell the territories to any individual or entity under any name for the purposes of replacing gaskets or any other commercial/residential kitchen business. This sentence provides context to the term "exclusive," demonstrating that it refers to BWGaskets' obligation to refrain from reselling the territories purchased by the Plaintiffs, such that the Plaintiffs will be the only individuals with the "right to use the Gasket Guy name and logo in the operation of the business." (Doc. No. 60-A3.) This sentence does not support a construction that the term "exclusive" places an affirmative duty on the Defendants to protect the Plaintiffs from third-party infringement. Moreover, aside from the term "exclusive," the agreements are entirely devoid of any indication that the Defendants assumed the affirmative duty to protect the Plaintiffs from third-party infringement.

In the alternative, the Plaintiffs argue that the term "exclusive" is ambiguous, and the Court should therefore consider parol evidence to clarify its meaning. However, a term is not ambiguous where the ambiguity arises only after a court considers potential inconsistencies between contract terms and extrinsic evidence. *Lambert*, 680 So. 2d at 590 (holding that the trial court impermissibly created ambiguity by comparing the contracts to extrinsic evidence). "The court must give full force to the plain and clear language of the governing documents and not turn to parol evidence to interpret

to support a finding that the use of the term exclusive creates an affirmative duty for the Defendants to protect the Plaintiffs from third-party infringement.

-16-

the language" in the absence of ambiguity. *Id.* (*citing Shuster v. South Broward Hosp. Dist. Physicians' Prof'l Liab. Ins. Trust*, 570 So. 2d 1362, 1368 (Fla. 4th DCA 1990).

In the present case, the agreements do not support the Plaintiffs' contention that the Defendants assumed the affirmative duty to police and protect the "Gasket Guy" trade name in the Plaintiffs' territories. Only by looking to parol evidence does the suggestion of such an affirmative duty arise, and where, as here, "there is no ambiguity, the search for the parties' intent should not stray from within the four corners of the document." *Barakat*, 771 So.2d at 1194. Therefore, the Court finds that the language of the agreements is clear and unambiguous. The parties agreed that BWGaskets will not sell the territories to any individual or entity for the purposes of replacing gaskets or any other commercial/residential kitchen business. The parties did not agree that BWGaskets would assume the affirmative duty to protect the Plaintiffs' territories from third-party infringement. Because the Plaintiffs do not allege, and the record does not contain any evidence to support a finding, that the Defendants sold the Los Angeles or Orange County territories to any individual or entity for the purposes of replacing gaskets or any other commercial/residential kitchen business, the Defendants' Motion for Summary Judgment on Counts III and IV will be granted to the extent Counts III and IV allege breach of contract for failure to protect the Plaintiffs' territories from third-party infringement.

**b. Subsequent Oral Modification of the Las Vegas Agreement**

In Florida, it is "well established that a written contract may be modified by a subsequent oral agreement or subsequent conduct of the parties, even though the written contract purports to prohibit such modification." *Beach Higher Power Corp. v. Granados*, 717 So. 2d 563, 565 (Fla. 3d DCA 1998); *see also F.M.W. Props., Inc v. Peoples First Fin. Sav. and Loan Ass'n*, 606 So. 2d 372, 375

(Fla. 1st DCA 1992); *Pathway Fin. v. Miami Int'l Realty Co.*, 588 So. 2d 1000, 1005 (Fla. 3d DCA 1991). No modification can occur unless it is by mutual consent and supported by consideration. *Rhodes v. BLP Assocs., Inc.* 944 So. 2d 527, 534 (Fla. 4th DCA 2006) (*citing St. Joe Corp v. McIver*, 875 So. 2d 375, 382 (Fla. 2004). "Whether the parties have validly modified a contract is usually a question of fact." *St. Joe*, 875 So. 2d at 382 (*citing Kiwanis Club of Little Havana, Inc. v. de Kalafe*, 723 So. 2d 838, 841 (Fla. 3d DCA 1998).

With respect to Count V, the Defendants concede that the Las Vegas territory was owned by John Grose at the time the parties entered into the Las Vegas Agreement. Despite this fact, the Defendants maintain that they did not breach the exclusivity provision of the Las Vegas Agreement because the Las Vegas Agreement was subject to a valid oral modification taking into account Grose's presence in the territory. Defendants argue that the Plaintiffs' knowledge of Grose's ownership of the territory at the time the agreement was executed, the numerous discussions between the parties regarding Grose, and the Plaintiff's payment of only the first $10,000 of the $80,000 purchase price of the territory demonstrate that the agreement was orally modified.

The summary judgment record contains evidence to support a finding that the Las Vegas Agreement was subject to a subsequent oral modification. Nonetheless, summary judgment is inappropriate with respect to the breach of contract claims in Count V because, even if the Court were to determine that the Las Vegas Agreement was subject to a valid oral modification, genuine issues of material fact would still exist regarding the nature of the modification. For example, the summary judgment record does not demonstrate whether the parties potentially agreed to a specific time frame for the removal of Grose, or a manner in which the removal would proceed. With such critical terms remaining undefined, the Court would be unable to determine if the Defendants in fact breached the

allegedly modified contract. Whether or not a particular oral modification is valid is generally a question of fact, and the record contains insufficient evidence for the Court to make such factual determinations. *Lake Sue Dev. Co. Inc. v. Keewin Real Prop. Co.*, 950 So. 2d 1280, 1284 (Fla. 5th DCA 2007). Accordingly, the Defendants' Motion for Summary Judgment is inappropriate with respect to the exclusivity provision of the Las Vegas Agreement in Count V.

### c. Defendants' Right to License the Gasket Guy Trade Name

The second breach of contract claim brought by the Plaintiffs in Counts III, IV and V involves the Defendants' alleged failure to provide the Plaintiffs with the right to use the "Gasket Guy" trade name in the purchased territories. The Plaintiffs maintain that although the agreements, which were executed in 2005 and 2006, purported to grant the Plaintiffs the right to use the "Gasket Guy" trade name, the Defendants had no legal right to use or to license the trade name prior to 2007. In their Motion for Summary Judgment, the Defendants maintain that the record unequivocally establishes that BWGaskets had the right to use and license the "Gasket Guy" trade name at the time the parties entered into the agreements.

A court must not grant summary judgment if a reasonable fact finder could draw more than one inference from the facts and that inference creates a genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). In this case, the parties present conflicting evidence upon which a reasonable fact finder could draw more than one inference with respect to the Defendants' right to license the "Gasket Guy" trade name. As discussed previously, a letter to Bruce Williams from Castiello states that Castiello gave BWGaskets permission to use the trade name in June of 2003, as corroborated by the deposition testimony of both Bruce and Ann Williams. On the other hand, Castiello's deposition testimony suggests that such permission was

provided no earlier than January 2007. In light of this conflicting evidence, the Defendants' Motion for Summary Judgment will be denied for the breach of contract claims alleging failure to provide the right to use the "Gasket Guy" trade name in Counts III, IV and V.

**d. Breach of Contract Damages**

In Count III, IV and V of the Second Amended Complaint Plaintiffs allege that as a result of the Defendants' breach, Plaintiffs have been damaged by the complete loss of their investments relative to the agreements, lost income on those investments, and the expense associated with establishing and maintaining the Las Vegas and Los Angeles gasket stores. In their Motion for Summary Judgment, the Defendants maintain that the Plaintiffs fail to properly establish the element of damages because the allegations regarding damages made in the Second Amended Complaint are completely controverted by the evidence. The Defendants rely on Ginney Siever's deposition testimony, stating that the Plaintiffs are happy with the Gasket Guy business, and Young's failure to calculate lost profits or diminished value in the damages report. In response, the Plaintiffs maintain that the failure to seek lost profits does not entitle the Defendants to summary judgment.

Under Florida law, damages are an essential element of an action for breach of contract. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). An award of damages for breach of contract is intended to place the injured party in the position he or she would have been in had the breach not occurred. *Sharick v. S.E. Univ. Health Sci., Inc.*, 780 So. 2d 136 (Fla. 3d DCA 2000). A party injured by breach of contract is entitled to recover those damages that "naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered." *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002) (*citing Scott v. Rolling Hills Place, Inc.*, 688 So. 2d 937, 940 (Fla. 5th DCA 1996). While lost

profits may be an appropriate measure of damages in a breach of contract claim, they are not the only measure of damages that may be used to establish this essential element. *Sampley Enters., Inc. v. Laurilla*, 404 So. 2d 841, 842 (Fla. 5th DCA 1981).

In the present case, Young's damages report includes both a calculation of territory pricing damages and a calculation of damages arising from the operation of the Las Vegas and Los Angeles gasket stores. As discussed previously, Young arrived at the figure for territory pricing damages by deducting the value of the tangible items and training services from the total amount paid for each territory. With respect to the Las Vegas and Los Angeles gasket store operation damages, Young calculated the initial start up costs, operation expenses, and termination costs. While the Defendants may dispute the manner in which Young arrived at the damages figures, it cannot be said that, as a matter of law, the Plaintiffs have failed to establish the damages element of the breach of contract claim simply because the Plaintiffs did not calculate lost profits or because the Plaintiffs intend to continue the business. Therefore, the Defendants' Motion for Summary Judgment on Counts III, IV and V will be denied to the extent the Defendants allege failure to establish damages for breach of contract.

## IV. Florida's Sale of Business Opportunities Act - Count VI

In Count VI of the Second Amended Complaint, Plaintiffs seek damages for a violation of the Florida Sale of Business Opportunities Act ("FSOBA"). Fla. Stat. §§ 559.809 *et seq*. In their Motion for Summary Judgment, the Defendants argue that the Plaintiffs fail to establish the requisite element of damages under Section 559.813, Florida Statutes, because the Defendants did not commit breach of contract or fraud.

Section 559.813(3), Florida Statutes states in relevant part that "[a]ny person injured by a *violation of this part*, or by the business opportunity seller's breach of a contract subject to this part, or any obligation arising therefrom, may bring an action for recovery of damages, including reasonable attorney's fees." Fla. Stat. § 559.813(3) (emphasis added). Therefore, under FSOBA, plaintiffs are entitled to recover damages for both breach of contract and any other violation of FSOBA. In this case, the Plaintiffs maintain that, in addition to breach of contract, the Defendants violated both Section 559.809 and Section 559.811 of the Florida Statutes.[6] Thus, even if the Court accepted the Defendants' contentions regarding the breach of contract and fraud claims, the Plaintiffs could still maintain a FSOBA claim under Section 559.809 and Section 559.811. Accordingly, the Plaintiffs may establish a claim under FSOBA for breach of contract and violation of Section 559.809 and Section 559.811 of the Florida Statutes. Defendants' Motion for Summary Judgment on Count VI will therefore be denied.

### Conclusion

The Motion for Partial Summary Judgment by Plaintiffs Robert Siever and Ginney Siever (Doc. No. 58, filed Aug. 5, 2009) is **DENIED**. The Motion for Summary Judgment by Defendants BWGaskets, Inc., Bruce Williams and Ann Williams (Doc. No. 52, filed July 22, 2009) is **GRANTED in part** and **DENIED in part.** The Motion is **GRANTED** to the extent Defendant seeks summary judgment on breach of the exclusivity provision of the Los Angeles and

---

[6] Section 559.809(6), Florida Statutes, states that "[b]usiness opportunity sellers shall not (6) misrepresent, by failure to disclose or otherwise, the termination, transfer, or renewal provision of a business opportunity agreement. Section 559.811(c), Florida Statutes, states that the agreements must include "[t]he seller's principal business address and the name and address of its agent in the state authorized to receive service of process."

-22-

Orange County Agreements in Counts III and IV.  The Motion is **DENIED** in all other respects.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on October 25  , 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Parties